Filed 11/22/21  P. v. Medina CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B310334 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA124873) |
| v. | |
| PAUL MEDINA, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Kathleen Caverly and Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Paul Medina also known as Paul Medina, Jr. appeals from a judgment of conviction. He argues the trial court erred in allowing witnesses to testify against him while wearing masks that covered their noses and mouths. Defendant recognizes that "mitigating concerns about the COVID-19 pandemic [are] indisputably an important public policy interest," but nevertheless contends that the masks violated his constitutional right to confront these witnesses.

We need not address the constitutional issue because even if arguendo requiring the witnesses to wear masks was error, the error was harmless beyond a reasonable doubt. The evidence against defendant at trial was overwhelming. An eyewitness observed defendant enter and leave a storage facility; catalytic converters were stolen from vehicles in that facility; and a short time after the theft, police officers caught defendant with the catalytic converters,[1] a saw used to cut the catalytic converters off vehicles, and a hydraulic press used to access those catalytic converters. There was also a video of defendant and his confederate entering and leaving the storage facility. Defendant presented no evidence at trial and there was no conflicting evidence regarding the theft. Under these circumstances, any error in allowing witnesses to testify while wearing masks over their noses and mouths was harmless beyond a reasonable doubt. Accordingly, we affirm defendant's judgment of conviction.

---

[1] A catalytic converter part of a vehicle's exhaust system that helps reduce emissions.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with one count of grand theft. The People alleged that defendant suffered a prior robbery conviction within the meaning of the "Three Strikes" law. A jury convicted defendant of grand theft. In addition to sentencing him for grand theft, the trial court sentenced defendant for the prior robbery conviction after defendant violated probation for that conviction.

### 1. *Prior robbery plea and probation violation*

In 2019, defendant pleaded no contest to one count of robbery committed on April 29, 2019. The court suspended sentence and placed defendant on formal probation.

At a concurrent probation revocation hearing on the robbery conviction and preliminary hearing on the grand theft charge, the trial court determined defendant violated his probation and revoked the probation. The court postponed sentencing defendant for the robbery until after his trial on the grand theft charge.

### 2. *Grand theft*

#### a. Evidence at trial

On June 24, 2020, defendant was the passenger in a silver BMW SUV. The BMW's driver parked near a storage facility called Rest Your Case. Rest Your Case stored vehicles on the property. The business was surrounded by a wall and fence. Defendant did not have authority to enter the storage facility or remove any parts from the vehicles.

Jesse B., who lived near the storage facility, observed defendant and his confederate jump over the fence at the storage

facility. The confederate was carrying a green backpack. Jesse B. called the police. Jesse B. could not see defendant while defendant was inside the storage facility. Jesse B., however, observed defendant and his confederate leave the storage facility and return to the BMW SUV, carrying the green backpack and a cardboard box. The green backpack appeared to have items in it that were not in the backpack when Jesse B. initially observed the two men. Jesse B. called the police department a second time. Jesse B. identified defendant in a show-up the night of the incident. The field show-up involved officers asking Jesse B. if defendant was the person Jesse B. saw committing the crime. Jesse B. could not identify defendant at trial.

A surveillance video played for the jury showed two persons jumping over the fence to enter and leave the storage facility. The two persons were carrying several items when they left the storage facility and one assisted the other in lifting the items over the wall at the perimeter of the property. Pictures admitted into evidence showed a green backpack containing three catalytic converters and the position of the green backpack in the BMW SUV in which defendant was a passenger.

Lieutenant Thomas Avila observed the BMW SUV while defendant and his confederate were inside the storage facility. Lieutenant Avila observed two males enter the BMW. Avila identified defendant as one of the men. Defendant's confederate placed a green backpack in the back of the vehicle.

Corporal Billy Johnson stopped the BMW after Avila observed defendant and his confederate enter it. Inside the BMW, defendant and his confederate had a saw, that was warm, indicating recent usage. They also had three catalytic converters inside a green backpack. Johnson found a hydraulic jack under

4

the passenger floorboard. Johnson explained that a hydraulic jack may be used to lift a vehicle so its underside can be easily accessed. Johnson identified defendant as the passenger of the silver BMW SUV.

A search of the storage facility revealed that three catalytic converters were missing. It was undisputed that the cost of the three catalytic converters totaled over $3,000.

At trial, no witness testified for the defense.

### b.    Verdict and sentence

The jury found defendant guilty of one count of grand theft for taking property exceeding $950. Defendant represented himself at sentencing. The court sentenced defendant to eight months in state prison for the grand theft consecutive to three years for the robbery conviction. Defendant timely appealed from the judgment.

## DISCUSSION

Trial occurred in October 2020, during a global pandemic. At the beginning of trial, citing the Confrontation Clause, defendant requested that all witnesses remove their masks while testifying. The trial court denied defendant's request. On appeal, defendant argues this violated his constitutional right to confront mask-wearing witnesses. Defendant argues that he suffered prejudice because the prosecution's case rested on circumstantial evidence and the masks hindered the jurors' ability to assess each witness's credibility.

"We review violations of the confrontation clause for harmless error using the *Chapman*[2] standard. [Citation.]

---

[2] *Chapman v. California* (1967) 386 U.S. 18.

5

'A violation of the Sixth Amendment's confrontation right requires reversal of the judgment against a criminal defendant unless the prosecution can show beyond a reasonable doubt that the error did not contribute to the verdict obtained.' [Citation.] ' " 'To say that an error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' " ' [Citation.]" (*People v. Garcia* (2020) 46 Cal.App.5th 123, 178–179.) Assuming without deciding that allowing the witnesses to wear masks over their nose and mouths violated defendant's right to confrontation, this assumed error was harmless beyond a reasonable doubt.

Two men entered Rest Your Case (the storage facility), without the owner's consent and removed three catalytic converters from vehicles stored there. Two eyewitnesses—Jesse B. and Johnson—identified defendant as one of those men and defendant presented no contrary evidence. Officers apprehended defendant in a BMW shortly after the incident and found a saw still warm indicating recent use, a hydraulic press, and a green backpack containing three catalytic converters in the BMW. The green backpack was the same one Jesse B. testified he saw two men carry into the storage facility. A video played for the jury showed two men jumping over the fence at the storage facility, confirming Jesse B.'s testimony.[3]

Defendant correctly points out that Corporal Johnson testified his trainee did not write a detailed police report describing the incident. Johnson would have "articulate[d] a

---

[3] The resolution of the video is not sufficiently clear to see the faces of the two men who enter the storage facility.

little bit more witness statements, victim statements.  I [Johnson] would probably be personally more detailed on the evidence that was located."  Defendant points to no prejudice stemming from the absence of a detailed police report.  The fact that the report could have been written better, standing alone, does not demonstrate prejudice from the witnesses wearing masks covering their noses and mouths.  At trial, the police report was not a substitute for witness statements because the percipient witnesses and the owner of the storage facility testified, the latter making clear that defendant lacked authority to enter the facility.  Also, as the Attorney General points out, the jury did not have to resolve conflicting witness testimony because there was none.  For all these reasons, any purported constitutional error in requiring all witnesses to wear masks over their mouths and noses while testifying was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


BENDIX, J.

We concur:


ROTHSCHILD, P. J.                    CRANDALL, J.*

_____

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7